## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

RAYMOND ROBERT HOLDERER                                        PLAINTIFF


V.                            NO. 4:11CV00227 JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                        DEFENDANT

## MEMORANDUM AND ORDER

### I.  Introduction

Plaintiff, Raymond Robert Holderer, has appealed the final decision of the

Commissioner of the Social Security Administration (the "Commissioner"), denying

his claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI").  Both parties have filed Appeal Briefs (docket entries #10 and #11),

and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error.  *Long v. Chater,* 108, F.3d 185, 187 (8th Cir. 1997); *see also,*

42 U.S.C. § 405(g).  While "substantial evidence" is that which a reasonable mind

might accept as adequate to support a conclusion,[1] "substantial evidence on the record

as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On September 12, 2008, Plaintiff filed applications for DIB and SSI (Tr. 99-112), alleging disability since March 28, 2008. In his Disability Report – Adult, he stated that his disabling conditions were depression, cancer, kidney problems, and neck and low back pain. (Tr. 132). After Plaintiff's claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ").

On July 27, 2009, the ALJ conducted an administrative hearing, where Plaintiff and a vocational expert ("VE") testified. (Tr. 9-39). At the time of the hearing, he was 51-years old and had completed high school. (Tr. 12, 136). He had past relevant work as a master plumber, a plumber supervisor, and a plumbing foreman.

The ALJ considered Plaintiff's impairments by way of the familiar five-step

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

sequential evaluation process.   Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment.  *Id.*, § 404.1520(4)(ii), § 416.920.  If not, benefits are denied.  *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920.[2]  If so, and the duration requirement is met, benefits are awarded.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  *Id.*, § 404.1520(4)(iv), § 416.920.  If so, benefits are denied.  *Id.*

---

[2]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e).  This RFC is then used by the ALJ in his analysis at Steps 4 or 5.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his January 19, 2010 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 28, 2008, his alleged onset date; (2) had "severe" impairments consisting of degenerative joint disease of the cervical spine and depression; (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the RFC to perform non-skilled medium work; (5) could not perform his past relevant work; but (6) could perform other work existing in significant numbers in the national economy, with examples including jobs as a kitchen helper, cook helper, and industrial cleaner. (Tr. 47-58). Accordingly, the ALJ concluded that Plaintiff was not disabled.

On March 2, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 4-5). Plaintiff then filed his Complaint appealing that decision to this Court. (Docket entry #2).

In Plaintiff's Appeal Brief, he argues that the ALJ erred: (1) in failing to adequately develop the record; (2) in failing to consider all of the evidence in the

record; (3) in discounting his credibility; (4) in discounting the opinions of his treating physicians; (5) in assessing his RFC; and (6) in asking the VE a defective hypothetical question.

For the reasons discussed below, the Court concludes that Plaintiff's arguments are without merit.

## II. Discussion

### A.      The ALJ's Development Of The Record

According to Plaintiff, the ALJ did not adequately develop the record because he failed to obtain opinions from Plaintiff's treating physicians about his RFC.  In making this argument, Plaintiff acknowledges that there was a consultative physical examination performed by Dr. Gary Stewart, but claims that "no RFC was completed by the examiner." (Pltf's App. Brf. at 7).

Plaintiff cites *no authority* for the proposition that an ALJ must obtain a RFC opinion from a treating or examining physician.  Furthermore, well-established case law makes it clear that, while the RFC assessment must be supported by "some medical evidence," "it is ultimately an administrative determination reserved to the Commissioner."  *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).  The opinion of a consultative physician unquestionably constitutes "some medical evidence" supporting the ALJ's decision.

In this case, the consulting physician, Dr. Stewart, concluded that Plaintiff had "no limitations" in the ability to walk, stand, sit, lift, carry, handle, finger, see, and hear. (Tr. 315). Thus, Dr. Stewart's opinion was "some medical evidence" in the record supporting the ALJ's assessment of Plaintiff's physical RFC.

With respect to Plaintiff's mental RFC, he argues that the ALJ "ma[de] no attempt to obtain an RFC assessment from treating psychiatrists or therapists[.]" (Pltf's App. Brf. at 8). However, the medical evidence from the sources in question was consistent with the ALJ's finding that Plaintiff did not have disabling mental limitations. In fact, one of Plaintiff's treating psychiatrists, Dr. Roy Ragsdill, advised Plaintiff to look for work. *See* Tr. 552 ("He's [Plaintiff] not looked [for work] at hardware stores or other jobs which are a little off the usual path for him, and I encouraged him to do so, which I think would help him get over his feeling of being a sluggard"). Finally, the ALJ accounted for Plaintiff having some mental limitations, by limiting him to unskilled work. (Tr. 52).

Although an ALJ has an independent duty to develop the record "fairly and fully," *see Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004), he is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Plaintiff has made no showing that a crucial issue was undeveloped.

## B.  The ALJ's Alleged Failure to Consider The Entire Record

Plaintiff next argues that the ALJ disregarded certain evidence that "detracted from his findings."  According to Plaintiff, the ALJ should have found that he had other Step 2 "severe" impairments, including generalized anxiety disorder, adjustment disorder with depressed mood, "multiple pain issues," "back and neck pain," and fatigue.  (Pltf's App. Brf. at 2).  Plaintiff contends that this omission makes it clear that the ALJ did not consider all of the evidence.

To the extent that Plaintiff faults the ALJ's Step 2 analysis, the point is moot because the ALJ did not terminate his analysis at Step 2.  Once an ALJ finds that a claimant has a "severe" impairment at Step 2, the ALJ must then consider all impairments, including those that are less than "severe," in determining a claimant's RFC.  *See* 20 C.F.R. §§ 404.1545(e); 416.945(e); Social Security Ruling 96-8p, at 5; *see also  Maziarz v. Secretary of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) (failure of ALJ to find claimant's cervical condition was non-severe at Step 2 was not reversible error where ALJ also found that claimant had "severe" heart disease so that he could consider the cervical condition in the RFC determination).  Moreover, the ALJ is not required to discuss "every piece of evidence," and the "failure to cite specific evidence does not indicate that such evidence was not

considered."  *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)

### C.  The ALJ's Credibility Assessment

Plaintiff argues that the ALJ erred in his credibility assessment by: (1) "fail[ing] to cite anything that could possibly amount to substantial evidence;" (2) improperly weighing his daily activities; (3) failing to note his numerous visits to doctors; (4) improperly weighing his receipt of unemployment benefits; and (5) failing to note his positive work record.  (Pltf's App. Brf. at 9-11).

Contrary to Plaintiff's argument, the ALJ's decision makes it clear that he took into account matters such as Plaintiff's daily activities, medications, the precipitating/aggravating factors, and the medical record before deciding that Plaintiff's subjective complaints were not fully credible. (Tr. 52-56). After reviewing the complete record, the Court concludes that the ALJ properly evaluated Plaintiff's credibility.[3]

---

[3] The Court notes that the ALJ did *not* cite the Eighth Circuit's decision in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which enumerates the pertinent criteria in the credibility evaluation.  However, the ALJ did cite 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. (Tr. 52).  Social Security Ruling 96-7p tracks *Polaski* and 20 C.F.R. § 404.1529(c)(3), and elaborates on them.  *See also Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ's failure to cite *Polaski* is not reversible error where the proper regulations were cited and the ALJ considered the pertinent credibility factors).

### D.    The ALJ's Consideration of the Opinions of Treating Physicians

Plaintiff makes the following attack on the ALJ's consideration of the opinions

of Plaintiff's treating physicians:

> In this matter, the ALJ never asked the treating doctors for an opinion
> or an RFC. In fact, it is not clear on what he based his RFC. He clearly
> did not give credence to the treating doctors at Counseling Associates
> or Kaiser Permaneute's Department of Psychology. All of the doctors at
> these facilities have consistently diagnosed a generalized anxiety
> disorder, which the plaintiff has testified is a great deal of his problem
> keeping him from work. The ALJ declined to find that this was a severe
> impairment. All of plaintiff's doctors have described severe neck and
> back pain. The ALJ refuses to apply more than medium restrictions even
> in light of all these diagnoses.
> * * *
> He decides the mental health professional correctly diagnosed
> depression but not anxiety and does not explain why he has not asked
> the doctor to clarify with an RFC. This is not permissable [sic].

(Pltf's App. Brf. at 12).  Importantly, Plaintiff does *not* explain what opinions from

his treating physicians the ALJ supposedly disregarded.  Instead, he simply lists

various diagnoses.

An ALJ should "properly focus on the functional limitations" caused by an

impairment rather than a diagnosis.  *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th

Cir. 1990).  Furthermore, for the reasons explained earlier, the ALJ was under no

obligation to contact Plaintiff's treating physicians to "obtain an RFC."

-9-

### E.   The ALJ's RFC Assessment

Plaintiff argues that the ALJ erred in assessing his RFC.  According to Plaintiff, the ALJ should have included Plaintiff's "anxiety, decreased range of motion in his neck, his fatigue, neck and back pain, anhedonia, crying spells, difficulty concentrating or paying attention, lack of motivation, [and] inability to be around people" in his RFC.  (Pltf's App. Brf. at 13).

As indicated earlier, the ALJ's physical RFC assessment was consistent with the consultative physical examination of Dr. Stewart.  Plaintiff points to no evidence where any treating or examining physician ever placed any restrictions or limitations on him that were inconsistent with the physical RFC assessed by the ALJ.

With respect to Plaintiff's mental RFC, the ALJ accounted for him having certain limitations by limiting him to unskilled work.  To the extent that Plaintiff relies on his own testimony to support his mental limitations, the ALJ properly discounted Plaintiff's testimony.  As also noted earlier, one of Plaintiff's treating psychiatrists encouraged him to look for work.  As with his physical RFC, Plaintiff points to no medical evidence inconsistent with the mental RFC assessed by the ALJ.

### F.   The ALJ's Hypothetical Question

Finally, Plaintiff contends that, at Step 5, the ALJ asked the VE a defective

hypothetical question because it did not encompass all of Plaintiff's limitations.[4] This

point for reversal is simply a restatement of Plaintiff's previous arguments that the

ALJ erred in discounting Plaintiff's credibility and in assessing Plaintiff's RFC.

Because the Court concluded that those arguments had no merit, this point likewise

has none.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent

decision.  Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings.  The test is whether there is substantial

evidence in the record as a whole which supports the decision of the ALJ.  *E.g.,*

*Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), superceded by statute on other

grounds; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).   The Court has

reviewed the entire record, including the briefs, the ALJ's decision, and the transcript

of the hearing.   The Court concludes that the record as a whole contains ample

evidence that "a reasonable mind might accept as adequate to support [the]

conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also*

*Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Court further concludes

---

[4]Although the VE testified at the administrative hearing (Tr. 36-37), the pertinent hypothetical question and response is contained in the VE's answers to written interrogatories propounded by the ALJ.  (Tr. 207-210).

that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner

is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 26th day of April, 2012.


_____

UNITED STATES MAGISTRATE JUDGE